· THE PEOPLE ex rel. ELLEN M. DOUBLEDAY, Appellant,
    *v.* JOHN KELLY, Comptroller of the City of New York,
    Respondent.

*Redemption from tax sales in the city of New York — chap.* 274 *of* 1876.

Chapter 274 of 1876, providing that, at any time within one year after the passage of the act, any person might pay to the comptroller of the city of New York the amount of any tax upon property belonging to such person theretofore imposed and *then remaining unpaid,* together with interest at seven per cent per annum, for the time that such tax was imposed, only applied to cases in which the taxes had not as yet been paid to the public authorities,. and did not provide for the redemption of property previously sold for the non-payment of taxes, the time to redeem which had not as yet expired.

Appeal from an order denying a motion that a writ of peremptory mandamus issue out of the Supreme Court, directed to, and commanding Andrew H. Green, as comptroller of the city of New York, to receive from the relator herein the sum of $794.50 with interest thereon at the rate of seven per cent per annum, from the 17th day

of September, 1869, to the time of the payment; and the further sum of $900, with interest thereon at the rate of seven per cent per annum, from the 19th day of September, 1870, to the time of payment, and upon such payment to make and deliver to relator a receipt therefor and to forthwith cancel the record of the taxes for the year 1869 and the year 1870, imposed upon the property of the relator, which was more particularly described in her affidavit.

*James A. Deering*, for the appellant. Assuming that the tax sale was valid, yet the taxes in question were "now remaining unpaid." Within the definition of the word "payment," as used in the tax law and the act of 1876, a tax remains unpaid until actually paid by the owner of the land, and the record of the tax and sale has been canceled by the proper officer. (*Williams* v. *Townsend*, 31 N. Y., 411; *Fitzpatrick* v. *Flagg*, 5 Abb. Pr., 213; Laws 1853, chap. 579, § 16.)

*J. A. Beall*, for the respondent. The taxes have been paid and the comptroller has no authority to receive them a second time. (Hilliard on Taxation, 484, § 2; Blackwell on Tax Titles, 646–650.) If the act of 1876 invalidates sales for taxes and leases made and delivered in pursuance of such sales, then the act impairs the obligation of contracts, and is void as in conflict with subdivision 1 of section 10, article 1 of the Constitution of the United States. (*Dikeman* v. *Dikeman*, 11 Paige Ch., 484; *Bruce* v. *Schuyler*, 4 Gilm. [9 Ill.], 274–278; *Nelson* v. *Rountree*, 23 Wisc, 368, 371; *Dolan* v. *Trelevan*, 31 id., 151; *Adams* v. *Beale*, 19 Iowa, 61; Blackwell on Tax Titles, 299, 300.)

Daniels, J. :

The applicant owned real estate upon Walker street, in the city of New York, which, on the 9th of March, 1874, was sold for the non-payment of the taxes imposed upon it by the board of supervisors of the county for the years 1869 and 1870.

The property was purchased at the sale made, by William H. Ely. He advanced to the authorities the amount due for the taxes, with interest upon it to the time of the sale; and the measures provided by chapter 381 of the Laws of 1871 were taken for the purpose of

completing and perfecting his title to the property; but before the time had expired for a redemption from the sale by the owner she offered to pay the taxes to the comptroller, with seven per cent interest.

That was much less than the amount required to redeem the property from the sale by the terms of the act referred to, and no claim has been made that its provisions upon this subject have been complied with. That act directed that sales should be made after a certain period had elapsed after the imposition of taxes upon real estate, and it prescribed the notices and the mode of proceeding which should be followed to render them effectual.

It also provided the manner in which the owner might redeem, or in case no redemption should be made, the proceeding by which the title of the purchaser would become absolute. By virtue of those provisions the money paid for the purpose of redeeming the property sold was required to be paid and received for the benefit of the purchaser. The authority of the clerk of arrears was substantially an agency to receive the amount mentioned in the certificate of sale, with fourteen per cent interest for the benefit of the purchaser. (Laws of 1871, vol. 1, p. 744, chap. 381.) As to the city and county, the taxes were paid by the advance made by the purchaser under the terms of the sale.

There was from that time nothing further due to any person other than the purchaser, and if redemption were made, the money used to make it became his property. The payment was designed to operate upon his title and to extinguish his interest under the sale. The business was wholly between him and the owner, through the intervention of the clerk of arrears.

But without offering to comply with what had been prescribed for this purpose by the act of 1871, the owner of the property applied directly to the comptroller to receive the amount of the taxes, with seven per cent interest, under chapter 274 of the Laws of 1876. That provided that any person might, within one year after its enactment, pay any taxes previously laid and imposed, and then remaining unpaid, with seven per cent interest, and that the comptroller should make and deliver a receipt therefor, and cancel the record of the tax.

That payment was to satisfy the tax, the interest upon it, and any

penalty which might otherwise have been claimed by reason of default in making it.   (Laws of 1876, chap. 274.)

The comptroller declined to receive the money, and the writ of mandamus was applied for to compel him to do so, and to discharge the taxes; and it was denied, because the case made was not within the provision contained in the statute.

This act was only intended to apply to cases where the tax remained unpaid to the public authorities.

It did not provide for a redemption of the property after a sale for non-payment had been made.   A different proceeding had been prescribed for that purpose, and no design was in any form evinced to repeal or supersede the provisions which had been previously made upon that subject.   Both statutes may very well and very consistently be maintained together; and where that proves to be the case, a preceding act is not repealed by implication by force of another afterwards enacted.

The act of 1876 was in no sense an act for the redemption of property sold for the non-payment of taxes, but it was simply an act to allow payment to be made where nothing had transpired preventing that from being done, upon terms which were more favorable than had otherwise been prescribed; and it was applicable only to cases in which no sale had been made.   There the business remained between the owner and the public.   The rights or interests of no purchaser intervened, and none were accordingly considered or provided for by the terms of the act.   It related to payments which could properly be received by the comptroller, and the omission to provide that the money should be received or held for the use of a purchaser, is cogent evidence that payment before a sale was alone contemplated by the act.

If that had not been the intent, provision would have been made for defraying expenses incurred in advertising and selling the property, and for the extinguishment of the rights of the purchaser.   By the terms of the act under which the sale took place he became entitled to fourteen per cent interest on the money advanced by him, in case his title should be defeated by a redemption.   That rate of interest had accrued in this instance since the 9th of March, 1874, and for more than two years before the applicant offered to pay the taxes under the act of 1876.

This act evinced no intention to deprive the purchaser of that interest, and no provision was made by it or by any other act for its payment, in any other way than by the owners' redemption of the property sold. It could not have been the purpose to deprive the purchaser of the rate of interest he became entitled to as one of the authorized regulations of the sale. That would not have been attempted without some expression of the design. And yet the act of 1876 had declared nothing whatever upon the subject. It merely provided for a payment, and not for a redemption, and must have been intended to be applicable only to cases in which payment only would be proper, and all that might be necessary to extinguish the tax. All that by the terms of the act could be effected by the payment allowed, was the extinguishment of the lien and the discharge and satisfaction of the tax.

No extinguishment of the rights of the purchaser was provided for, as a consequence to be secured by payment. But if a case involving such rights had been intended to be provided for, they certainly would not have been wholly neglected, as they have been by the terms of this act. If the act can be properly construed to include cases of sales upon which the taxes have already been received, then there would seem to be the same reason for extending it to those in which the time for redemption had been lost by lapse of time.

The power which could, by such an enactment, deprive the purchaser of his interest, would seem to be equally as potent over his title. The terms of the act could as well be held to include the one as the other. But such an act would not be a constitutional exercise of legislative authority, because of its interference with vested individual rights. No such difficulty would be found in the way, however, as long as the demand still remained in the hands of the public authorities.

There it would be a proper subject of legislation without possible injury to any one. And that, it is to be presumed, was what was intended to be affected by the act of 1876. It was to allow payment to be made, where nothing beyond that was needed, to relieve the property of the party paying. And, accordingly, it made provision for payment, but none whatever for redemption. It was claimed that the proceedings which had been taken were not regu-

lar, and for that reason the writ ought to have been issued. But this act has not provided for the trial of that allegation in this way. It has provided for the right and effect of payment alone, when that can be properly made. Beyond that the provision made by it has not been extended. What it secured was the privilege of paying an unsatisfied tax. That did not exist in this case, so far as the city or county was concerned. For to that extent the money had previously been received from the purchaser at the sale, and he and not the city was entitled to whatever should be received to defeat his interest.

If the taxes had not been lawfully laid, and were not legalized by the act under which the sale was made, then they formed no charge upon the applicant's property. But if they were properly laid, or were rendered regular by that act, then, as the sale itself was advertised and made as the act of 1871 required it to be done, the applicant could not relieve her property from the effect of the sale, by merely proposing to pay according to the provisions of the act of 1876.

If the proceedings were void for want of conformity to the law, then the writ was not necessary for the vindication of the applicant's rights. But if they were valid, that of itself was a good reason for denying the application. In neither view was the case a proper one for interference by means of the writ of mandamus. The order should, therefore, be affirmed, with the usual costs and disbursements.

BRADY, J., concurred. DAVIS, P. J., not sitting.

Order affirmed, with ten dollars costs and disbursements.